169 P.3d 291

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Pedro ZAPATA–REYES, Defendant–Appellant.**

No. 32908.

Court of Appeals of Idaho.

Sept. 26, 2007.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant. Heather M. Carlson argued.

Hon. Lawrence G. Wasden, Attorney General; Courtney E. Beebe, Deputy Attorney General, Boise, for respondent. Courtney E. Beebe argued.

## AMENDED OPINION

**THE COURT'S PRIOR OPINION DATED SEPTEMBER 14, 2007, IS HEREBY WITHDRAWN.**

PERRY, Chief Judge.

Pedro Zapata–Reyes appeals from his judgment of conviction for trafficking in methamphetamine. Specifically, he challenges the district court's order denying his motion to suppress evidence. Because we conclude that Zapata–Reyes' motion to suppress should have been granted, we vacate the judgment of conviction.

## I.

### FACTS AND PROCEDURE

On February 24, 2005, at 10:15 p.m., a Caldwell resident called the police and reported that he was concerned that his house may be shot at by three or four people in a "white Corsica, or Buick like, a Pontiac" that had driven past twice that evening. The caller stated that his house had been shot at two weeks before and requested that the police keep an eye on his house for the night. The caller also provided dispatch with his name and address, but he did not know the name of the driver or the license plate number of the car and gave no description of the occupants other than saying there were three or four of them. Nor did the caller indicate how much time had passed since the suspicious vehicle had last driven past his house. Dispatch radioed patrol officers that there was a suspicious vehicle in the area of the caller's address, describing the vehicle as a white Corsica. Dispatch also indicated that the caller was concerned that the people in the car were going to shoot at his house but did not indicate how many people were in the car. An officer in an unmarked patrol car was near the caller's house. Upon responding to the call, the officer passed a white Oldsmobile passenger car approximately one block from the caller's residence. The car was being driven away from the location of the caller's house. The officer turned around to follow the white Oldsmobile, but it pulled into the parking area of a nearby taco stand. The officer stopped behind the Oldsmobile and illuminated it with his spotlight.

As the officer stopped behind the vehicle, Zapata–Reyes, who was the only passenger, exited the vehicle and walked to the line at the taco stand. The officer exited his patrol car and approached the driver, who had also begun to walk toward the taco stand. The officer, who was wearing a shirt that identified him as a police officer, began questioning the driver. A second officer arrived at the scene in a marked patrol car and a police uniform after hearing the report from dispatch. The first officer asked the second officer to contact Zapata–Reyes. The second officer asked Zapata–Reyes to leave the line at the taco stand to be questioned near the patrol cars, and the officer subsequently obtained Zapata–Reyes' driver's license. The officer discovered, through dispatch, that Zapata–Reyes had no outstanding warrants. Zapata–Reyes thereafter translated for the officers as they questioned the driver of the vehicle, who spoke little English. During this encounter, the second officer noticed that Zapata–Reyes had a bulge in his left pants pocket and asked the first officer if they should search Zapata–Reyes. The first officer, who had found a pocket knife in the driver's pocket after searching the Oldsmobile and the driver, asked Zapata–Reyes if the officers could search him for weapons, and Zapata–Reyes agreed to be searched.

When the second officer patted down Zapata–Reyes, he could feel that the bulge contained a hard object between the size of a tennis ball and a golf ball inside of a softer object. The second officer asked Zapata–Reyes to remove the object. Zapata–Reyes removed the object, which was a first aid bag that was zippered shut, and handed it to the officer. Zapata–Reyes indicated he did not know what was in the first aid bag when the officer asked him. The officer opened the first aid bag and found a fifty-dollar bill and two clear plastic bags containing forty-one grams of hard, crystallized methamphetamine.

The state charged Zapata–Reyes with trafficking in methamphetamine. I.C. § 37–2732B(a)(4). Zapata–Reyes moved to suppress the methamphetamine as the fruit of an unlawful search. The district court denied Zapata–Reyes' motion to suppress, ruling that the search was a reasonable search for weapons during a lawful detention. A jury found Zapata–Reyes guilty of trafficking in methamphetamine, and the district court sentenced him to a unified term of eight years, with a minimum period of confinement of three years. Zapata–Reyes appeals, challenging the denial of his motion to suppress.

## II.

## STANDARD OF REVIEW

 The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997

(1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## III.

## ANALYSIS

Zapata–Reyes challenges the district court's ruling that the officer's stop of his person and the search of his first-aid bag were reasonable under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution.[1] The state asserts that, even if there was a stop that implicated Zapata–Reyes' Fourth Amendment rights, the detention and the search were reasonable.

 A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–76 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct.App.1999). In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct.App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct.App.1999).

 The stop is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911; *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *Ferreira*, 133 Idaho at 479, 988 P.2d at 705. However, merely because there are reasonable grounds to justify a lawful investigatory stop, such grounds do not automatically justify a frisk for weapons. *Babb*, 133 Idaho at 892, 994 P.2d at 635.

1. Although Zapata–Reyes contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Zapata–Reyes's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct.App.1999).

An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909; *Babb,* 133 Idaho at 892, 994 P.2d at 635; *Fleenor,* 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb,* 133 Idaho at 892, 994 P.2d at 635; *Fleenor,* 133 Idaho at 555, 989 P.2d at 787. *See also State v. Muir,* 116 Idaho 565, 567–68, 777 P.2d 1238, 1240–41 (Ct.App.1989).

 We must first address the state's assertion that Zapata–Reyes did not prove that a seizure occurred. When a defendant seeks to suppress evidence allegedly obtained as a result of an illegal seizure, the burden of proving that a seizure occurred is on the defendant. *State v. Page,* 140 Idaho 841, 843, 103 P.3d 454, 456 (2004). The proper inquiry in determining whether a seizure occurred is whether, under all the circumstances surrounding an encounter, a reasonable person would have felt free to leave or otherwise decline the officer's requests and terminate the encounter. *Id. See also State v. Cardenas,* 143 Idaho 903, 906–08, 155 P.3d 704, 707–09 (Ct.App.2006). The officer asked Zapata–Reyes to step out of line at the taco stand after observing Zapata–Reyes as a passenger in the white Oldsmobile. The officer then secured Zapata–Reyes' driver's license and ran a check for outstanding warrants. Despite the state's contention to the contrary on appeal, Zapata–Reyes asserted at the hearing on the motion to suppress before the district court that a seizure occurred when the officer took his driver's license. We agree with the district court's ruling that the officer seized Zapata–Reyes because a seizure occurs when an officer secures the driver's license of a pedestrian or the passenger of an automobile and runs his or her name through dispatch to check for outstanding warrants. *See Page,* 140 Idaho at 845, 103 P.3d at 458. *See also Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357, 362 (1979). It was therefore incumbent upon the state to prove a proper justification for the seizure. *See State v. Sevy,* 129 Idaho 613, 615, 930 P.2d 1358, 1360 (Ct.App.1997).

In denying Zapata–Reyes's motion to suppress, the district court found that the officers had reasonable suspicion to conduct a brief investigatory detention of Zapata–Reyes. The district court held:

> The court has heard the testimony and evidence. The call to dispatch from a resident in the neighborhood indicating his concern about the possibility of another driveby shooting at his house predicated upon a white car driving past two times. He identified the car as a Corsica or a Buick.
>
> The officers responded, located the defendant and another person in a car substantially matching that description, that being a white Oldsmobile. [The first officer] observed defendant get out of the passenger seat. He directed [the second officer] to his location. I find that that does create a reasonable and articulable suspicion that the defendant—on the part of [the second officer] the defendant had committed or was about to commit a crime.

 The state asserts that the evidence supports the district court's finding that the white Oldsmobile in which Zapata–Reyes was a passenger substantially matched the description of the vehicle described by the caller—a white Corsica or Buick. The state further asserts that the tip from a known informant provided the officers with a reliable basis to suspect that criminal activity was in progress. Whether information from such a source is sufficient to create reasonable suspicion depends upon the content and reliability of the information presented by the source, including whether the informant reveals his or her identity and the basis of his or her knowledge. *State v. Larson* 135 Idaho 99, 101, 15 P.3d 334, 336 (Ct.App.2000). An anonymous tip, standing alone, is generally not enough to justify a stop because an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity. *Id.* However, where the information

comes from a known citizen informant rather than an anonymous tipster, the citizen's disclosure of her identity, which carries the risk of accountability if the allegations turn out to be fabricated, is generally deemed adequate to show veracity and reliability. *Id.* *See also State v. O'Bryan,* 96 Idaho 548, 552, 531 P.2d 1193, 1197 (1975); *State v. Peterson,* 133 Idaho 44, 47, 981 P.2d 1154, 1157 (Ct.App. 1999).

Relying on *Sevy,* Zapata–Reyes asserts that the officers lacked reasonable and articulable suspicion because the information provided by the caller did not establish that Zapata–Reyes was involved in criminal activity. In *Sevy,* the defendant was observed in a subdivision under construction where, in the past few weeks, there had been several thefts from building sites. When the builder called to report his observations about Sevy's pickup, he informed the police that he had previously reported thefts of material from his construction sites and that he had just observed a small pickup travel through the developed portion of the subdivision into an undeveloped area. He reported that the pickup stopped and that an occupant emerged from the pickup, walked around it, lingered for a couple of minutes and left. The builder noted the pickup's license number and gave it to the police. Sevy, however, was not near an area where construction materials were stored. Additionally, nothing in Sevy's conduct of getting out of his vehicle, walking about for a few minutes and driving away implied that criminal activity was afoot, nor did the builder's observations give any basis to link Sevy to thefts that had occurred at construction sites several days earlier. This Court therefore held that these facts did not support a reasonable suspicion for the stop. *Sevy,* 129 Idaho at 616, 930 P.2d at 1361.

In the present case, as in *Sevy,* the officers did not testify to any observations of their own that gave them any basis to suspect Zapata–Reyes of criminal activity. Thus, the detention was based solely upon the information received by police dispatch. The veracity of the information provided by the caller should be presumed because the caller provided his name and address and sought the aid of police. *See Larson,* 135 Idaho at 101, 15 P.3d at 336. *See also State v. Alexander,* 138 Idaho 18, 24, 56 P.3d 780, 786 (Ct.App.2002). Whether information from such a source is sufficient to create reasonable suspicion, however, depends upon the reliability *and the content* of the information presented by the source. *See Larson* 135 Idaho at 101, 15 P.3d at 336. Therefore, we must examine whether the information given to the police included articulable facts supporting a reasonable suspicion that Zapata–Reyes was involved in criminal activity.

The caller indicated that he thought the occupants of a white passenger vehicle, which he observed drive by his house twice, may shoot at his house. He also stated that his house had been shot at two weeks previously but provided no information connecting the suspicious white passenger vehicle to the previous incident. The district court determined, from listening to the audio tape of the call to dispatch, that three to four minutes passed between when the call came into dispatch and when the first officer spotted the white Oldsmobile within a block of the caller's residence. The audio tape supports this finding, and we therefore accept that the officer first observed the white Oldsmobile three to four minutes after the call came into dispatch. *See Atkinson,* 128 Idaho at 561, 916 P.2d at 1286. However, the caller did not indicate how much time had elapsed between when he last observed the suspicious white vehicle and when he called dispatch. Additionally, the caller's description of the suspicious vehicle was merely that it was a white passenger car, maybe a Corsica or a Buick, and did not include a license plate number. Although a call reporting a suspicious car with uncommon characteristics, such as a purple car or one with unique painting decals, may make the car identifiable without a license plate number, the caller here described a car of a common color—white—and provided no other significant distinguishing features. The description was therefore not of a vehicle that was easily distinguishable from other vehicles. No evidence was presented to show whether the Oldsmobile that Zapata–Reyes occupied bore a resemblance to any Corsicas or Buicks.

Moreover, although not relayed to the officers by dispatch, the caller indicated that there were three or four occupants in the vehicle that passed by his residence, not two occupants as in the Oldsmobile the officer followed and subsequently observed Zapata–Reyes exit from. We conclude from the totality of the circumstances that the officers did not possess a reasonable and articulable suspicion that Zapata–Reyes had committed or was about to commit a crime, and the officers therefore violated Zapata–Reyes' Fourth Amendment rights by detaining him.

 If evidence is not seized pursuant to a warrant or a recognized exception to the warrant requirement, the evidence discovered as a result of the warrantless search must be excluded as the fruit of the poisonous tree. *State v. Van Dorne*, 139 Idaho 961, 963, 88 P.3d 780, 782 (Ct.App.2004). The state asserts that Zapata–Reyes consented to the search once he was detained. However, even if we agreed with the state's contention that Zapata–Reyes consented to a search of his person and the first aid bag removed from his pocket, consent to search does not expunge the taint of unlawful police activity where the events are irrevocably intertwined. *See State v. Reynolds*, 143 Idaho 911, 916, 155 P.3d 712, 717 (Ct.App.2007); *State v. Kerley*, 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct.App.2000). We conclude in this case that any consent given was irrevocably intertwined with the unlawful detention because the officers asked to search Zapata–Reyes for weapons while the illegal detention continued. We therefore hold that the evidence seized from Zapata–Reyes should have been suppressed as the fruit of the illegal detention.

## IV.

### CONCLUSION

The district court properly concluded that the officers conducted a detention that implicated Zapata–Reyes' Fourth Amendment rights. The district court erred, however, when it ruled that the officers had a reasonable and articulable suspicion that Zapata–Reyes was involved in criminal activity prior to detaining him. The evidence seized during the ensuing search should have been suppressed as the fruit of the illegal detention. Therefore, we reverse the order denying Zapata–Reyes' motion to suppress and vacate Zapata–Reyes' judgment of conviction for trafficking in methamphetamine.

Judge LANSING and Judge GUTIERREZ concur.