**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36932**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2011 Opinion No. 30** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: May 19, 2011** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| DAWN M. JOHNSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Michael R. Crabtree, District Judge.

Judgment of conviction for trafficking in a controlled substance, possession of cocaine, and possession of drug paraphernalia, <u>affirmed</u>; order denying I.C.R. 35 motion for reduction of sentences, <u>reversed</u> <u>and</u> <u>remanded</u>.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Dawn M. Johnson appeals from her judgment of conviction for trafficking in a controlled substance, possession of cocaine, and possession of drug paraphernalia. Specifically, Johnson asserts that the district court erred by denying, in part, her motion to suppress. Johnson also appeals from the district court's order denying Johnson's I.C.R. 35 motion for reduction of her sentences. For the reasons set forth below, Johnson's judgment of conviction is affirmed, but the order denying her Rule 35 motion is reversed and remanded for further proceedings.

**I.**

**FACTS AND PROCEDURE**

The following facts were revealed through testimony at the hearing on Johnson's motion to suppress. A police officer was dispatched to a truck stop around 9:00 p.m. to investigate the possible discovery of a large amount of drugs outside the truck stop's bathrooms. The owner of

the truck stop informed the officer that he discovered what he thought were drugs in a baggie on the floor while cleaning the store. The officer interviewed a store employee, who indicated that only three people had come in the store that evening, including a woman in her fifties with brown hair and a hunched-over posture. The employee observed that the woman arrived in a brown or gold four-door vehicle, that the vehicle was parked near the front door of the store, and that she could see a man sitting in the car. The employee stated that the woman came into the store, inquired about some food, used the restroom, and left. Soon thereafter, the store owner arrived, began cleaning the store, and discovered the baggie on the floor.

The officer went to the sheriff's office to test the substances found by the truck stop owner. The substances tested presumptively positive as heroin and cocaine. The officer then returned to the truck stop to see if anyone would return to recover the baggie. The officer parked his vehicle so that he could observe the storefront and parking lot area of the truck stop. By the time the officer arrived, it was late at night and the truck stop was closed.

Approximately forty-five minutes later, a "lighter colored" four-door sedan pulled into the truck stop and parked near the front door of the store. A man got out of the passenger side of the vehicle with a flashlight and began to look around on the ground as though he had lost something. After about five minutes of searching the ground with the flashlight, the man shined his flashlight in the direction of the officer, immediately got back into the car, and left. Another person was driving the vehicle, although the officer could not clearly see the person.

The officer began to follow the vehicle and, as he approached it, noticed that the vehicle was gold colored. The officer activated his emergency lights and the vehicle pulled over. The officer approached the car, which contained the man from the parking lot, a female driver, and a person (who was later identified as Johnson) lying down in the back seat. The officer asked the man and the female driver why they had been at the truck stop and if they knew anything about the discovery of drugs there. The man answered that he was looking for a lost ring. The officer observed that the man and the female driver appeared to be nervous when he asked them about the drugs.

The officer ran the passengers' identifications through dispatch and discovered that the man was wanted on a felony drug warrant. The officer called for backup in order to effectuate the man's arrest. Once backup arrived, the officers arrested the man and secured the female driver outside of the vehicle. The officer assisted Johnson in exiting the backseat of the vehicle

2

and noticed that she had brown hair, appeared to be in her fifties, and stood with a hunched-over posture. The officers performed a search of the vehicle and discovered controlled substances and drug paraphernalia. The officers also searched Johnson's purse. Johnson and the other passengers were then arrested.

Johnson filed a motion to suppress the evidence discovered during the search of the car and her purse. The district court granted the motion as to the evidence discovered in Johnson's purse but denied the motion as to the evidence discovered in the car. The matter then proceeded to trial, after which the jury found Johnson guilty of trafficking in a controlled substance, I.C. § 37-2732B(a)(6)(A); possession of cocaine, I.C. § 37-2732 (c)(1); and possession of drug paraphernalia, I.C. § 37-2734A. Johnson was sentenced to a unified term of twenty-two years, with a minimum period of confinement of seven years for trafficking in a controlled substance; a fixed term of seven years for possession of cocaine; and a fixed term of one year for possession of paraphernalia. The district court ordered the sentences to be served concurrently.

Johnson filed a Rule 35 motion for reduction of her sentences. The file stamp from Johnson's Rule 35 motion indicates that it was filed with the district court seven days after the time frame for filing the motion had expired. The district court denied Johnson's motion without a hearing, concluding that, because it was not filed within the time set forth by I.C.R. 35, the motion was untimely. Johnson appeals.

## II.

## ANALYSIS

### A. Motion to Suppress

Johnson argues that the district court erred by denying her motion to suppress because the officer did not have reasonable suspicion to conduct the stop of the vehicle. Johnson also argues that the search of the vehicle was unlawful under the Fourth Amendment to the United States Constitution.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

### 1. Reasonable suspicion for the stop of Johnson's vehicle

We first address Johnson's contention that the officer did not possess reasonable suspicion to stop the vehicle. The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. A traffic stop constitutes a seizure of the driver and passengers of a vehicle and is therefore subject to Fourth Amendment strictures, but because it is limited in scope and duration, it is analogous to an investigative detention. *State v. Stewart*, 145 Idaho 641, 644, 181 P.3d 1249, 1252 (Ct. App. 2008). Under the Fourth Amendment, an investigative detention is a permissible seizure if it is based on specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 26 (1968); *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). The quantity and quality of information necessary to create reasonable suspicion for such a detention is less than that necessary to establish probable cause, *Alabama v. White*, 496 U.S. 325, 330 (1990) and *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009), but must be more than a mere hunch or unparticularized suspicion. *Terry*, 392 U.S. at 27. The justification for an investigative detention is evaluated upon the totality of the circumstances then known to the officer. *Sheldon*, 139 Idaho at 983, 88 P.3d at 1223. Further, to meet the constitutional standard of reasonableness, an investigative detention must not only be justified by reasonable suspicion, but must also be reasonably related in scope to the circumstances that justified the stop in the first place. *Id*.

Here, a significant amount of heroin and cocaine were found on the floor outside a truck stop's bathrooms. An employee of the truck stop told police that, while she was cleaning the store around 6:30 p.m., a woman entered the store and used the bathroom. The employee described the customer as a woman in her fifties with brown hair who walked hunched over. The employee indicated that a man was waiting for the woman outside in a gold or brown four-door sedan parked near the front door of the store.

During a stakeout of the truck stop approximately four hours after the woman customer left the store, the officer observed a four-door sedan arrive and park in approximately the same area where the customer's car was parked previously, as described by the employee. The officer

4

observed a man exit the passenger side of the vehicle and shine a flashlight on the ground near the car, as though he was looking for something. After a few minutes of searching the ground, the man shined the flashlight toward the officer's vehicle, abruptly got back in the car, and left. The officer noted that the man was not the driver of the vehicle, although the officer could not tell who was driving.

The officer followed the vehicle and, as he approached it, noticed that the car was gold in color. He activated his emergency lights and stopped the vehicle. Johnson argues that the officer did not have reasonable suspicion to stop the vehicle because the man's behavior in the parking lot was too generalized to rise to the level of reasonable suspicion that the man had committed or was about to commit a crime. Specifically, Johnson asserts that no description was given of the man who accompanied the woman customer to the truck stop and the description of the car was not specific enough to justify a stop of the vehicle. In support of her argument, Johnson relies on *State v. Sevy*, 129 Idaho 613, 930 P.2d 1358 (Ct. App. 1997) and *State v. Zapata-Reyes*, 144 Idaho 703, 169 P.3d 291 (Ct. App. 2007).

In *Sevy*, police stopped Sevy's vehicle in response to a citizen's phone call reporting that the driver of a vehicle in the neighborhood was acting suspiciously. The caller observed Sevy drive through a subdivision under construction at night, exit the vehicle, walk around for a few minutes, and then leave. The caller reported that construction materials had been stolen from the area in recent weeks and thought that Sevy's behavior was suspicious. This Court held that police did not possess reasonable suspicion to justify the stop of Sevy's vehicle under the Fourth Amendment:

> Sevy's brief stop in the subdivision was not near a construction site or an area where construction materials were stored, but in an undeveloped area. Nothing in his conduct of getting out of his vehicle, walking about for a few minutes and driving away implies that criminal activity was afoot, nor did the [caller's] observations give any basis to link Sevy to thefts that had occurred at construction sites several days earlier.

*Sevy*, 129 Idaho at 615, 930 P.2d at 1360.

In *Zapata-Reyes*, this Court also determined that the information provided by a caller did not provide police with reasonable suspicion to conduct an investigative detention. *Zapata-Reyes*, 144 Idaho at 709, 169 P.3d at 297. The caller in that case was concerned that passengers of a white vehicle, which had driven by the caller's house twice that evening, may shoot at his

house.  The caller's house had been shot at a few weeks prior, and the caller wanted the police to monitor his home in case the culprits returned.  A few minutes after receiving the call, police stopped Zapata-Reyes as he was exiting a white vehicle and walking up to a taco stand not far from the caller's house.  This Court held that the description of the vehicle given to police was so common that it could not be distinguished from other vehicles and could not give rise to reasonable suspicion of criminal activity.  *Zapata-Reyes*, 144 Idaho at 708-09, 169 P.3d at 296-97.

The circumstances here are distinguishable from the above-mentioned cases.  In both *Sevy* and in *Zapata-Reyes*, the information relied upon by police to establish reasonable suspicion was provided by outside sources and was not due to the officer's personal observation of suspicious activity.  Here, the officer observed the man behaving as though he had lost something in the location where a large amount of drugs were found, arriving in a car that matched the description of the car given by the employee, and parking in the area where the customer's car had been parked earlier.  In addition, unlike in *Sevy*, the man in this case was not simply lingering near a place where criminal activity was known to have occurred or only driving a vehicle matching the general description of a suspicious vehicle as in *Zapata-Reyes*.  Rather, the man was searching the parking lot of a store where drugs were found, in the dark, late at night, and after the truck stop had closed.  Further, upon noticing the officer parked nearby, the man abruptly left.  Johnson is correct that the car described by the employee was not specific and included common characteristics shared by many vehicles.  However, in addition to the car matching the employee's general description, the officer personally observed the man's suspicious behavior.  Therefore, based on the totality of the circumstances, the officer had reasonable and articulable suspicion that the man was involved in criminal activity and further investigation was warranted.

### 2.    Search of the vehicle

Johnson also argues that the warrantless search of the vehicle was unlawful.  The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.  Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment.  *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995).  The state may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the

6

circumstances. *Id. See also Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983) (officer safety exception applies to a search of an automobile's passenger compartment when an officer has reasonable suspicion that an individual is dangerous and might access the vehicle to gain immediate control of weapons); *State v. Veneroso*, 138 Idaho 925, 929, 71 P.3d 1072, 1076 (Ct. App. 2003) (automobile exception applies to a search of an automobile where officers have probable cause to believe that the automobile contains contraband or evidence of a crime); *State v. McIntee*, 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct. App. 1993) (search incident to a valid arrest is an exception to the warrant requirement).

In this case, the district court upheld the search of the vehicle as a lawful search incident to arrest. On appeal, Johnson argues that, in light of the United States Supreme Court's decision in *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710 (2009), the search of the vehicle incident to the arrest was unlawful. The district court did not have the benefit of the Supreme Court's decision in *Gant*, in which the Court determined that a search of a vehicle incident to arrest is lawful if it is reasonable to believe the vehicle contains evidence of the crime of arrest. *Gant*, ___ U.S. at ___, 129 S. Ct. 1723-24. The state concedes that the search in this case was not lawful as a search incident to arrest under *Gant*. However, the state contends that the search of the vehicle was supported by probable cause and therefore legal under the automobile exception to the warrant requirement.

Under the automobile exception, police officers may search an automobile and the containers within it when they have probable cause to believe that the automobile contains contraband or evidence of a crime. *State v. Gallegos*, 120 Idaho 894, 898, 821 P.2d 949, 953 (1991). Probable cause is a flexible, common-sense standard. A practical, nontechnical probability that incriminating evidence is present is all that is required. *Texas v. Brown*, 460 U.S. 730, 742 (1983). Probable cause does not require an actual showing of criminal activity, but only the probability or substantial chance of such activity. *Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983). The facts known to the officers must be judged in accordance with the factual and practical considerations of everyday life on which reasonable and prudent people act. *Id.* at 231. If probable cause exists to believe a vehicle contains evidence of criminal activity, the search of any area of the vehicle in which the evidence might be found is authorized. *United States v. Ross*, 456 U.S. 798, 820-21 (1982).

7

As described above, the officer had reasonable suspicion that the man riding in the gold four-door sedan was associated with the large quantity of drugs found outside the truck stop's bathrooms. Prior to the search of the vehicle, the officer observed that Johnson matched the particular description of the woman from the truck stop, who the employee described as the only customer in the store between the time that the employee cleaned the store and the discovery of the drugs on the floor. Specifically, Johnson looked to be in her fifties and stood with a hunched-over posture. These additional facts gave rise to probable cause to believe that evidence of a crime would be found in the vehicle. The information available to the officer prior to the stop, including the large amount of drugs found; the man's behavior in the parking lot; and the matching description of the car, coupled with Johnson's appearance and the man's felony drug warrant, indicated a substantial likelihood that evidence of drug activity would be found in the vehicle.

Therefore, based on the totality of the circumstances and the objective facts presented to the officers, probable cause existed to support a warrantless search of the vehicle under the automobile exception to the warrant requirement of the Fourth Amendment.[1] Although the district court upheld the search as a proper search incident to arrest, where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Pierce*, 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct. App. 1984). As a result, Johnson has failed to show that the district court erred by denying her motion to suppress.

 **B.    Rule 35**

Johnson filed a Rule 35 motion for reduction of her sentences, which the district court denied as untimely. Idaho Criminal Rule 35(b) sets forth the time for filing a Rule 35 motion and provides in pertinent part:

> The court may correct a sentence that has been imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 120 days after the filing of a judgment of conviction or within 120 days after the court releases retained jurisdiction.

---

[1]     The state also asserts that the good faith exception should apply to the officers' conduct because *Gant* had not been decided at the time of the search. Because we hold that the search of the vehicle was reasonable under the automobile exception to the warrant requirement of the Fourth Amendment, we need not address the state's argument regarding a good-faith exception to *Gant*.

Johnson's judgment of conviction was filed on July 9, 2009. Johnson was subsequently transported to prison. She asserts that she submitted her Rule 35 motion to prison authorities for mailing to the district court and prosecutor on November 6, 2009. The file stamp from Johnson's Rule 35 motion indicates that it was filed with the district court on November 13--seven days after the Rule 35 deadline had expired. The district court denied Johnson's motion without a hearing, concluding that, because it was not filed within the time set forth by I.C.R. 35, the motion was untimely.

On appeal, Johnson asserts that the "mailbox rule" should apply to render her Rule 35 motion timely filed.[2] The mailbox rule deems a pro se inmate's document filed as of the date it was submitted to prison authorities for the purpose of mailing to the court for filing. *Munson v. State*, 128 Idaho 639, 641, 917 P.2d 796, 798 (1996); *see also Hayes v. State*, 143 Idaho 88, 90-91, 137 P.3d 475, 477-78 (Ct. App. 2006) (holding that an inmate's notice of appeal was timely filed when the inmate demonstrated that he gave his notice of appeal to a prison paralegal prior to the deadline). The policy behind the mailbox rule is that, once a prisoner submits documents to prison authorities for filing with the court, the prisoner no longer has control over his or her documents. *Munson*, 128 Idaho at 643, 917 P.2d at 800. As the Court in *Munson* stated:

> Thus, no matter how far in advance pro se prisoners deliver their petitions to the proper prison authorities, they can never be sure that their petitions ultimately will be filed on time by the court clerk.

*Id*.

While no Idaho appellate court has specifically concluded that the mailbox rule pertains to Rule 35 motions, the same policy articulated in *Munson* applies. Just as a prisoner loses control over a notice of appeal or an application for post-conviction relief once it has been delivered to prison authorities for mailing, the same prisoner has no control over a Rule 35

---

[2] The state argues that, because Johnson failed to raise the mailbox rule as an argument below, she should be barred from asserting it on appeal. However, she had no opportunity to address the question below because the district court denied the motion for untimeliness without a hearing. We also note that the certificate of service on the motion indicating that it was served on the prosecutor on November 6 suggests the possibility that, on or before that date, the motion was delivered to prison authorities for filing with the court. In these circumstances, we will address Johnson's argument though it was not presented to the district court.

motion once it has been submitted for mailing. Therefore, we see no reason not to apply the mailbox rule to Rule 35 motions filed by pro se inmates.

Johnson asserts that the certificate of service accompanying her Rule 35 motion indicates a date of November 6, 2009, and establishes that she delivered the motion to prison authorities for mailing on that date. However, the question of whether the documents submitted along with Johnson's Rule 35 motion are sufficient to establish that Johnson timely submitted her documents for mailing to prison authorities is a question for the district court. Therefore, we reverse the district court's denial of Johnson's Rule 35 motion and remand for a determination of whether Johnson submitted the motion to prison authorities within the Rule 35 time limits.

If the district court determines that the motion was timely filed, the district court must decide the motion on the merits. In *State v. Diggie*, 140 Idaho 238, 240-41, 91 P.3d 1142, 1144-45 (Ct. App. 2004), this Court described the time limitation for filing a Rule 35 motion:

> Under Rule 35, a defendant has 120 days to move the court for reduction of a sentence. Idaho case law has interpreted this Rule to incorporate a reasonable period after the 120 days during which the court has jurisdiction to rule on the motion for reduction of sentence. We distinguish I.C. § 19-2601(4) from Rule 35. Rule 35 does not expressly extend the district court's jurisdiction to a specific number of days. Instead, Rule 35 allows the defendant 120 days to file a motion for relief. To give effect to the Rule, it is necessary that a court have jurisdiction to rule on the motion on days past the filing period. Therefore, jurisdiction to rule on a Rule 35 motion exists for a reasonable period of time. Unreasonable delay causes the district court to lose jurisdiction. The time limit in Rule 35 is a limit on the period in which a defendant may file his motion. It is not an express limitation on jurisdiction.

In other words, if a defendant files a Rule 35 motion within the required 120-day time period, the district court retains jurisdiction over the case for a reasonable period of time in order to consider the motion. We express no opinion as to the motion's merits or whether the district court should hold a hearing on the merits of the motion.

### III.
### CONCLUSION

Johnson has failed to demonstrate that the district court erred in denying her motion to suppress. Further, we conclude that the mailbox rule applied to the filing of Johnson's Rule 35 motion. Accordingly, Johnson's judgment of conviction is affirmed. However, the district

court's order denying Johnson's Rule 35 motion is reversed, and this case is remanded to the district court for further proceedings consistent with this opinion.

Chief Judge GRATTON and Judge LANSING, **CONCUR.**