# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48758

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, December 2022 Term |
| | ) | |
| v. | ) | Opinion filed: February 8, 2023 |
| | ) | |
| WAYNE THOMAS MARSH, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jason D. Scott, District Judge.

The order and judgment of the district court are <u>affirmed</u>.

Eric Don Fredericksen, Idaho State Appellate Public Defender, Boise, for Appellant. Ben McGreevy argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Kale Gans argued.

_____

MOELLER, Justice.

Wayne Thomas Marsh was detained by police after an informant reported witnessing an attempted burglary and described him to dispatch as one of the two suspects. During the investigatory detention that ensued, police discovered a valid, outstanding arrest warrant for Marsh. When a subsequent search incident to Marsh's arrest was performed, the police found methamphetamine in his pocket. After he was charged with possession of a controlled substance, Marsh filed a motion to suppress this evidence, which the district court denied. On appeal, Marsh argues that the informant's tip did not provide reasonable suspicion to justify the initial warrantless detention because it lacked adequate indicia of reliability. He also argues that the alternative basis for the district court's ruling, that discovery of the arrest warrant attenuated any illegality of his initial detention, was incorrect because of the heightened protections contained in the Idaho Constitution. For the following reasons, we affirm the order of the district court.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of August 7, 2020, an informant called police dispatch to report two men "across the street from [him] . . . trying to break into" a neighboring rental property. The informant gave dispatch his name ("Jeff") and cell phone number, and then identified the neighboring address to police as 5772 West Anna Street in Boise, Idaho. He explained that the townhome was for rent, but currently unoccupied. He then reported that the two men had been "trying to break in" about ten minutes before he called dispatch. The informant explained that he had tried to call the owner of the townhome first, but received no answer.

The informant told dispatch that he saw the two men go "around the back" and to the front door of the residence, but they were unable to get in. The informant described the men as follows: "two white males, in their thirties, early thirties, one of them – the other one is probably late thirties. One's got a bald head with tattoos. And the other one doesn't – just regular brown hair. But they both have backpacks." When dispatch asked where the men were now, the informant specified that they were walking southbound along Phillippi Street between Ponder Avenue and Cassia Street. He also mentioned taking pictures of the men trying to break into the townhome.

When dispatch radioed out the descriptions of the two men, Officer Kingland responded. While driving down Phillippi Street, he encountered two men who met the descriptions provided by the informant—two white males in their thirties, one bald and tattooed, the other with brown hair. Each man wore a backpack and they were walking southbound along Philippi, just as the informant had advised dispatch. Officer Kingland turned on his overhead lights and asked the two men to stop.

The two men were later identified as Jesse Fuller and Wayne Thomas Marsh. Officer Kingland first asked Fuller and Marsh what they had been doing at the townhome back on Anna Street. Marsh, the man with brown hair, admitted being there when he said he saw the "For Rent" sign and wanted to "go in and look around." Officer Kingland then advised both Marsh and his companion that they were being detained while he investigated the call for attempted burglary and disorderly conduct.

Marsh initially gave Officer Kingland a false name for a records check that returned no results. However, Marsh later gave his real name to a different officer on the scene, who then provided it to Officer Kingland. After a subsequent records check confirmed Marsh's identity, dispatch informed Officer Kingland of an active warrant for Marsh's arrest. Officer Kingland next

2

contacted the informant and the townhome's owner, and determined from these calls that no entry into the home had occurred.

Upon arresting Marsh for his outstanding warrant, Officer Kingland executed a search incident to the arrest. While doing so, he found 2.21 grams of methamphetamine in Marsh's pocket, as well as marijuana and a glass pipe in Marsh's backpack. Based on the discovery of the methamphetamine, the State charged Marsh with felony possession of a controlled substance.

Marsh moved to suppress the evidence, arguing that the initial police detention was unsupported by reasonable, articulable suspicion. He contended it was a warrantless seizure in violation of the Fourth Amendment and Article I, section 17 of the Idaho Constitution. Additionally, Marsh argued that Officer Kingland's discovery of a valid arrest warrant during the records check did not attenuate the initial illegality of Marsh's detention.

During the hearing on Marsh's motion to suppress, Officer Kingland testified concerning the events of August 7, as related above. The district court found Officer Kingland's testimony to be credible. On reviewing the dispatch audio and body cam footage, the district court also determined that the suspects' resemblance to the two men described by the informant established reasonable, articulable suspicion for an investigatory detention. The district court explained:

> The description given, as I already noted, involved the approximate age, early 30s; the race; the hair color, in Mr. Marsh's instance brown, and in his companion's instance, bald; that the companion had tattoos; and it involved the idea that both of them had backpacks. Now, it seems to me that this information and whether it suffices to give a reasonable, articulable suspicion that Mr. Marsh was one of those two folks, that the description given as to both men ought to be taken into account because the informant described two men and not just one and gave different descriptions for the two men, and then the officer encountered two men that met all these aspects of the description. So it seems to me that if you're just looking at, well, Mr. Marsh was described as a white man in his early 30s with brown hair and a backpack, that the reliability of that information, its tendency to point the finger at Mr. Marsh expands when one considers the description given of his companion, which also was accurate. So it seems to me that the description given by Jeff and relayed to Officer Kingland gave Officer Kingland reasonable, articulable suspicion that these two men he had encountered on Phillippi Street were the two men Jeff had seen at that residence, and I would note, I don't believe I've mentioned so far that another reason that supports that conclusion is that Jeff also described where these men were going, at least that they were headed, walking southbound on Phillippi Street, and when Officer Kingland encountered them, they indeed were. So the information received from the informant seems to have been right on and a good description that justifies the conclusion that these were the two men he

was looking for, justifies at least the officer in having had a reasonable, articulable suspicion of them.

The district court also determined that there was reasonable, articulable suspicion that Marsh and his companion had committed a crime at the townhome on Anna Street because the informant personally witnessed the men attempting an unlawful entry and going around to the back of the house. Because the informant specifically saw the two men go around to the back of the residence, the district court even found that there was "reasonable, articulable suspicion that they had committed the crime of trespass under Idaho Code Section 18-7008." The court reasoned that the "for rent" sign would not have created an "implied invitation to circle the residence, to go around the back," just as it would not create an invitation "to try to get inside," as the informant witnessed. Regarding the alternative attenuation argument, the district court concluded "the taint of the allegedly illegal stop [would be] attenuated" under the Fourth Amendment and the Idaho Constitution due to the discovery of the warrant. The district court then denied Marsh's motion to suppress the evidence.

Marsh entered into a conditional plea agreement with the State. He pleaded guilty to the felony possession charge while maintaining his right to appeal the denial of his motion to suppress evidence. The district court then entered a judgment of conviction and sentenced Marsh to three years fixed. Marsh timely appealed.

## II. STANDARD OF REVIEW

This Court applies a bifurcated standard of review when reviewing a denied motion to suppress. *State v. Howard*, 169 Idaho 379, 381, 496 P.3d 865, 867 (2021). This Court accepts "the trial court's findings of fact unless they are clearly erroneous" but freely reviews "the trial court's application of constitutional principles to the facts found." *Id.* (quoting *State v. Danney*, 153 Idaho 405, 408, 283 P.3d 722, 725 (2012)). "Findings of fact are not clearly erroneous if they are supported by substantial and competent evidence." *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009).

## III. ANALYSIS

Marsh argues that his investigative detention was unlawful because it was not based on reasonable, articulable suspicion. He contends that the descriptions from the informant were too general or vague to create reasonable suspicion that Marsh either: (1) was one of the two men described by the informant or (2) had committed a crime. The State responds by noting that the tip

was provided by a known informant who personally witnessed Marsh and a companion attempting to burglarize a neighboring home. Furthermore, the details in the informant's tip accurately described the men's appearance, activities, and location to such a degree that Officer Kingland could not only "immediately see that Marsh and the other man visually matched the reported pair," but he could also quickly confirm that Marsh had been at the house after briefly speaking to the two men. The district court concluded that the descriptions provided by the informant—accurately describing both men—established reasonable, articulable suspicion to stop Marsh and his companion and investigate any involvement in the alleged burglary. We agree with the district court's analysis.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "This guarantee is incorporated to the states through the Due Process Clause of the Fourteenth Amendment." *State v. Huntley*, 170 Idaho 521, 525–26, 513 P.3d 1141, 1145–46 (2022) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)). Like its Fourth Amendment counterpart, Article I, section 17, of the Idaho Constitution "guarantees at least the same protection." *Huntley*, 170 Idaho at 526, 513 P.3d at 1146. Evidence obtained in direct violation of either the Fourth Amendment or Article I, section 17 may not be used as evidence against the victim of the violation.[1] *Segura v. United States*, 468 U.S. 796, 804 (1984); *State v. Koivu*, 152 Idaho 511, 516, 272 P.3d 483, 488 (2012); *Bishop*, 146 Idaho at 810–11, 203 P.3d at 1209–10.

Generally, a seizure must be based on probable cause to be reasonable. *Huntley*, 170 Idaho at 526, 513 P.3d at 1146; *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. However, "[l]imited investigatory detentions are permissible when justified by an officer's reasonable articulable suspicion that a person has committed, or is about to commit, a crime." *State v. Morgan*, 154 Idaho 109, 112, 294 P.3d 1121, 1124 (2013). "Reasonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts." *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. While the "quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause," reasonable suspicion

---

[1] Notwithstanding Marsh's invocation of the search and seizure provision contained in Article I, section 17 of the Idaho Constitution to show his initial detention was improper, he has made no argument that it should be interpreted as providing any greater rights than those afforded by the Fourth Amendment to the U.S. Constitution. We acknowledge that Marsh has made a more specific argument concerning the application of Article I, section 17 in his arguments regarding attenuation; however, for reasons discussed below, it is not necessary for us to address that argument.

5

still "requires more than a mere hunch or 'inchoate and unparticularized suspicion.' " *Id.* (quoting *Alabama v. White*, 496 U.S. 325, 329–30 (1990)). "Whether an officer possessed reasonable suspicion is evaluated based on the totality of the circumstances known to the officer at or before the time of the stop." *Id.*

In *Bishop*, this Court established that an informant's tip concerning suspected criminal activity "may give rise to reasonable suspicion when it would 'warrant a man of reasonable caution in the belief that a stop was appropriate.' " *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). "When a tip is involved," this Court "evaluate[s] the totality of the circumstances, but the veracity, reliability, and basis of knowledge of the informant and their tip are 'highly relevant' factors in determining whether reasonable suspicion exists." *Huntley*, 170 Idaho at 527, 513 P.3d at 1147. In other words, a tip must have " 'adequate indicia of reliability' to justify reasonable suspicion for a brief investigatory detention." *Id.* "The more reliable the tip, the less information [is] required to establish reasonable suspicion." *Bishop*, 146 Idaho at 812, 203 P.3d at 1211.

We have recognized two types of informants in Idaho—known and anonymous. Information from a "known" informant that contains "a description of a suspect and alleges that he or she committed a crime" is "generally sufficient to establish reasonable suspicion." *Id.* Such tips are "presumed reliable" because a known informant's "reputation can be assessed and, if the informant is untruthful, he or she may be subject to criminal liability for making a false report." *Huntley*, 170 Idaho at 527, 513 P.3d at 1147; *Bishop*, 146 Idaho at 812, 203 P.3d at 1211. Still, "the content of the tip and the informant's basis of knowledge remain relevant in determining whether the tip gave rise to reasonable suspicion." *Bishop*, 146 Idaho at 812, 203 P.3d at 1211. As this Court recently explained in *Huntley*, there are multiple factors that constitute "indicia of reliability," which are considered in the totality of the circumstances analysis:

> A non-exhaustive list of factors under the totality analysis includes whether: (1) the informant reveals his or her identity; (2) the informant reveals the basis of his or her knowledge; (3) the location of the informant is known; (4) the information was based on personal knowledge of events as they occurred; (5) the information was subject to "immediate confirmation or corroboration by police"; (6) the informant has previously provided reliable information; (7) the provided information is predictive; and (8) the informant could be held criminally liable if their provided information is false.

170 Idaho at 527, 513 P.3d at 1147.

At least six of these factors are present here. First and foremost, neither Marsh nor the State dispute that the informant was a known citizen calling in the tip. He provided his name, his location (living across the street from the townhome), and his cell phone number to police. Officer Kingland was able to contact the informant soon after detaining Marsh to gather more information as part of his investigation into the alleged attempted burglary. Thus, the informant here provided both his identity and the basis of his knowledge of events—namely, being an eyewitness who lived across the street and observed Marsh's actions in the neighborhood. Equally important here is that the informant's information was based on personal observations, which are "one of the strongest possible indications of basis of knowledge." *State v. Carlson*, 134 Idaho 471, 476, 4 P.3d 1122, 1127 (Ct. App. 2000). While nothing in the dispatch call indicates that this informant previously provided information to police, his identity was known well enough that the informant could have faced criminal liability for providing false information. All of these factors establish a reliable basis of knowledge for the events at the townhome on August 7.

Additionally, the content of the tip was sufficiently detailed to give Officer Kingland reasonable suspicion that Marsh and his companion were the two men observed "trying to break into" the townhome. When the informant called police dispatch, he accurately described the "two white males, in their thirties," as one with brown hair, the other bald and tattooed, and both were carrying backpacks. When dispatch asked about the men's location, the informant again accurately specified that they were walking southbound along Phillippi Street.

Assuming, *arguendo*, that the informant's description of Marsh, individually, was too generic because it lacked significant distinguishing details to identify him specifically, we agree with the district court's conclusion that it was still sufficient to establish reasonable suspicion under the totality of the circumstances. For example, the informant reported that Marsh was not traveling alone. He described the appearance of not one but two suspects, and said they were traveling together on Phillippi Street. All these details, taken together, narrowed the field to a very specific pair of men. As Officer Kingland drove north along Phillippi Street, he found Marsh and Fuller, who both met the informant's description. Immediately upon detaining Marsh and his companion, Officer Kingland learned that they had just been at the townhome rental property in question, thereby confirming that portion of the informant's report. Thus, not only were police able to immediately corroborate the informant's tip, but the description provided specific distinguishing details that allowed Officer Kingland to immediately identify the pair on sight.

7

Marsh points out that the State confuses established facts from the district court with portions of Officer Kingland's testimony, arguing that the informant never specifically described Marsh's physical attempts to enter the apartment by detailing his efforts to get in through the windows, doors, or garage. This is true. The informant's tip did not establish *how* the men were trying to enter the townhome; it merely reported that they *were* "trying to break into" the townhome and that the men ultimately went "around the back" of the property. Although such information would have been helpful, the lack of such detail is not determinative here. What matters is the informant's perception of what was happening, and the informant clearly believed he was witnessing an attempted break in at the residence. For example, if an informant calls law enforcement to report a battery in progress, the lack of a detailed description of exactly how the crime was taking place would not necessarily prevent law enforcement from detaining the suspect described in such a report. As the district court summarized, a "for rent" sign would not create a license to enter the residence, and it would certainly not establish a license to go around the back of the house. Thus, the informant's descriptions of the two men, coupled with his description of what they appeared to be doing, established reasonable suspicion that Marsh and his companion had been engaged in criminal activity at the townhome.

Additionally, Marsh points to the lack of other details to say the tip was too vague, including the lack of a description of the clothing or the tattoos. He compares his case to *State v. Zapata-Reyes*, in which the Court of Appeals determined a tip lacked "significant distinguishing features" to identify one vehicle from others. 144 Idaho 703, 708, 169 P.3d 291, 296 (Ct. App. 2007). In *Zapata-Reyes*, an informant called to tell police that he suspected a white passenger vehicle—that had already driven past his home twice—may be preparing to shoot at his home. *Id.* The informant only specified that the car was white, "maybe a Corsica or a Buick, and did not include a license plate number." *Id.* The informant also indicated that there were three or four occupants inside the vehicle. *Id.* at 709, 169 P.3d at 297. Police ultimately stopped a white Oldsmobile with two occupants. On reviewing the circumstances, the Court of Appeals determined the car's color was too common to be a distinguishing feature from other vehicles, and that other significant distinguishing features were lacking.

> [T]he caller here described a car of a common color—white—and provided no other significant distinguishing features. The description was therefore not of a vehicle that was easily distinguishable from other vehicles. No evidence was presented to show whether the Oldsmobile that Zapata–Reyes occupied bore a

resemblance to any Corsicas or Buicks. Moreover . . . the caller indicated that there were three or four occupants in the vehicle that passed by his residence, not two occupants as in the Oldsmobile the officer followed and subsequently observed Zapata–Reyes exit from.

144 Idaho at 708–09, 169 P.3d at 296–97.

This case is clearly distinguishable from *Zapata-Reyes*. Here, as noted, the informant provided several details to identify a pair of men, including their appearance and location. The informant described one man as white with brown hair, who Officer Kingland later identified as Marsh. Though these details, taken alone, may compare with *Zapata-Reyes*, additional details further identified Marsh—that he carried a backpack, he was traveling with a bald, tattooed companion, and he was walking southbound along Phillippi Street. The informant's descriptions of the two men he saw trying to break into the townhome were consistent with the two men Officer Kingland stopped on Phillippi Street.

Based on the substantial and competent evidence in the record that support its findings of fact, we hold that the district court correctly determined that the totality of the circumstances provided reasonable suspicion that Marsh and his companion were the two men the known informant witnessed trying to break into the townhome. Therefore, we conclude that the district court did not err in ruling that this was a lawful detention under the Fourth Amendment. Accordingly, we affirm the district court's order denying Marsh's motion to suppress the evidence later obtained during the search incident to arrest. Because this holding is dispositive of the case, we need not address the district court's alternative basis for its ruling under the attenuation doctrine, including Marsh's claim that the Idaho Constitution would afford him greater rights than under the federal constitution.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's order and judgment of conviction.

Chief Justice BEVAN, Justices BRODY, STEGNER and ZAHN **CONCUR.**

9