EISMANN, Justice.
This is an appeal from an order suppressing evidence. A law enforcement officer following two vehicles turned on the overhead lights of his patrol ear in order to pull over the lead vehicle. Both vehicles pulled over, and the officer parked his car behind the lead vehicle and several car lengths in front of the rear vehicle. When the officer got out of his car, he walked back to the rear vehicle to tell the driver he was only stopping the lead vehicle. The district court held that by walking towards the rear vehicle, the officer seized its occupants without a reasonable, articulable suspicion that they had violated any law. We reverse.
I.
Factual Background.
The relevant facts in this matter are uneontradicted. After dark on March 17, 2009, a state trooper was driving his patrol car west on a two-lane state highway when he saw a silver Subaru station wagon approaching from the opposite direction. The Subaru had one headlight that was out, and after it passed him the trooper made a U-turn in order to pursue the Subaru. By the time he had turned around, there was a red Toyota pickup following closely behind the Subaru. Because the highway was a narrow, two-lane road and the Toyota was close behind the Subaru, the trooper was unable to pass the Toyota in order to pull directly behind the Subaru.
As the Subaru was approaching a turnout along the right side of the highway, the trooper activated the overhead lights on his patrol ear. The Subaru pulled into the turnout and drove to a point near its far end. The Toyota also pulled into the turnout and stopped at a point near where the turnout began, but the point at which it stopped left enough room for the patrol car to park behind it in the turnout had the trooper wanted to do so.
The trooper drove his car past the Toyota and stopped directly behind the Subaru, in order to create as much space as he could between his patrol car and the Toyota. The distance from the back of the patrol car to the front of the Toyota was about three to five ear lengths. About eight seconds passed between the time the trooper passed the Toyota and when he opened his vehicle door to get out. Upon exiting his patrol car, the trooper walked back to the Toyota to tell the driver that he was stopping the Subaru and that the driver of the Toyota was free to go. About sixteen seconds passed between the trooper opening his car door and him saying “Hello” to the driver of the Toyota.[1]
When the trooper walked up to the Toyota, the driver rolled his window down part way, and the trooper immediately smelled marijuana. He ultimately arrested the passenger, Irvin C. Ray, for felony possession of more than three ounces of marijuana. Ray concedes that if he had not been unlawfully seized when the trooper walked up to the Toyota, then the discovery and seizure of the marijuana were lawful.
Ray was charged with misdemeanor possession of drug paraphernalia with the intent to use and felony possession of more than three ounces of marijuana. The charges were made in two separate cases, which were then consolidated in the district court, although the order of consolidation is not in the record.
On May 22, 2009, Ray moved in both eases to suppress evidence seized from his backpack. The evidentiary hearing on that motion was held on July 21, 2009, and the trooper was the only witness. At the conclusion of the hearing, the district court announced its holding. It held that when the trooper began walking toward the Toyota, he unlawfully seized its occupants. The court orally granted the motion to suppress, and then entered a written order granting the motion on July 27, 2009.
*566 After the court orally announced its ruling, the prosecutor suggested that the eases be dismissed. The defense counsel then made the motion, and the prosecutor stated that he had no objection. The court granted the motion, dismissing both cases. The order dismissing the misdemeanor case was entered on July 21, 2009.
An order granting a motion to suppress evidence is appealable. I.AR. 11(e)(7). The State filed a notice of appeal on August 5, 2009. The deputy attorney general who filed the notice of appeal was unaware that there were two eases, and he only filed a notice of appeal in the misdemeanor case.
The appeal was first heard by the Idaho Court of Appeals, which affirmed the district court’s order suppressing the evidence. We then granted the State’s petition for review. When we grant a petition for review, we hear the case anew, directly reviewing the decision of the trial court and not the decision of the Court of Appeals. Head v. State, 137 Idaho 1, 2, 43 P.3d 760, 761 (2002).
II.
Analysis.
In 1927, the Idaho legislature enacted a statute requiring the driver of a motor vehicle to pull over and stop “[u]pon the approach of any police or fire department vehicle giving audible signal by bell, siren or exhaust whistle” and to remain stopped “unless otherwise directed by a police or traffic officer until the police or fire department vehicle shall have passed.” Ch. 260, § 20, 1927 Idaho Sess. Laws 482, 491. In 1953, the legislature changed the requirement so that a driver was only required to yield if the authorized emergency vehicle also had “at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle,” but the legislature exempted police vehicles from the requirement of having a red light. Ch. 273, §§ 25.1 & 86, 1953 Idaho Sess. Laws 478, 485-86, 509. The legislature also defined an authorized emergency vehicle to include “such ambulances and emergency vehicles of municipal departments or public service corporations as are designated or authorized by the commissioner or by the chief of police of an incorporated city or village.” Ch. 273, § 2(e), 1953 Idaho Sess. Laws 478, 479. In 1977, the legislature required drivers to pull over and stop at the approach of authorized emergency vehicles that were “making use of an audible or visible signal” that met statutory requirements. Ch. 152, § 2, 1977 Idaho Sess. Laws 337, 368-69.
In 1977, an authorized emergency vehicle was defined as, “Vehicles operated by any fire department or law enforcement agency of the state of Idaho or any political subdivision thereof, and ambulances of any public utility or public service corporation.” Ch. 152, § 2,1977 Idaho Sess. Laws 337,349. In subsequent years, the legislature greatly expanded the definition of an authorized emergency vehicle so that it currently is as follows:
Vehicles operated by any fire department or law enforcement agency of the state of Idaho or any political subdivision of the state, ambulances, vehicles belonging to personnel of voluntary fire departments while in performance of official duties only, vehicles belonging to, or operated by EMS personnel certified or otherwise recognized by the EMS bureau of the Idaho department of health and welfare while in the performance of emergency medical services, sheriffs search and rescue vehicles which are under the immediate supervision of the county sheriff, wreckers which are engaged in motor vehicle recovery operations and are blocking part or all of one (1) or more lanes of traffic, other emergency vehicles designated by the director of the Idaho state police or vehicles authorized by the Idaho transportation board and used in the enforcement of laws specified in section 40-510, Idaho Code, pertaining to vehicles of ten thousand (10,000) pounds or greater.
I.C. § 49-123(2)(b).
The current version of the statute requiring a driver to pull over and stop upon the approach of an authorized emergency vehicle or a police vehicle is as follows:
*567 Operation of vehicles on approach of authorized emergency or police vehicles.
(1) Upon the immediate approach of an authorized emergency or police vehicle making use of an audible or visible signal, meeting the requirements of section 49-623, Idaho Code, the driver of every other vehicle shall yield the righf>of-way and immediately drive to a position parallel to, and as close as possible to, the nearest edge or curb of the highway lawful for parking and clear of any intersection, and stop and remain in that position until the authorized emergency or police vehicle has passed, except when otherwise directed by a peace officer.
(2) This section shall not operate to relieve the driver of an authorized emergency or police vehicle from the duty to drive with due regard for the safety of all persons using the highway.
I.C. § 49-625 (2008).
The current statute provides that upon the approach of an authorized emergency or police vehicle using an audible or visual signal that meets statutory requirements, the driver of every other vehicle shall immediately pull over “and stop and remain in that position until the authorized emergency or police vehicle has passed, except when otherwise directed by a peace officer.” Id. The driver is required to pull over and stop whether the approaching vehicle is a fire engine, an ambulance, a search and rescue pickup, or a police car. As soon as such approaching vehicle has passed, the driver is free to resume his or her journey, “except when otherwise directed by a peace officer.” The obvious purpose of requiring the driver to pull over and stop until the emergency or police vehicle has passed is to prevent the driver’s vehicle from impeding the emergency or police vehicle.
A driver who pulls over and stops as required by section 49-625 has not been seized, any more than has a driver who is required by law to stop upon approaching a school bus displaying visual signals, I.C. § 49-1422, or at a railroad crossing displaying visual signals, I.C. § 49-648, or at a flashing red traffic signal, I.C. § 49-804(1), or at a steady red traffic signal, I.C. § 49-802(3). Even when the patrol car is approaching from the rear with its overhead lights flashing, the driver does not know whether the officer wants him to stop or simply to pull over to get out of the officer’s way. The driver is free to drive away once the emergency or police vehicle passes “except when otherwise directed by a peace officer.” Thus, the driver is not seized unless he or she is directed by a peace officer not to leave.
The typical way that a peace officer does that is by stopping his vehicle behind the stopped vehicle while leaving the patrol car’s overhead lights operating. In this case, the state trooper did not stop behind the Toyota pickup, even though there was ample room behind it in the turnout to do so. The trooper passed it and drove to a point directly behind the Subaru, stopping as close to it as he could. When the trooper stopped, the rear of his vehicle was three to five car lengths from the front of the Toyota. At that point, he had done nothing that would indicate that the driver of the Toyota was not free to leave. In fact, by passing the Toyota he indicated the opposite — that the driver was free to leave. When the trooper stopped behind the Subaru, his vehicle was in no way impeding the driver of the Toyota from leaving.
After the trooper had stopped behind the Subaru, he got out of his patrol car and began walking back to the Toyota to tell the driver he was stopping the Subaru and the driver of the Toyota was free to go. The district court held that the trooper’s act of walking toward the Toyota constituted a seizure of the occupants of the Toyota because it indicated that they were not free to leave.
When reviewing a trial court’s ruling on a motion to suppress, this Court will not disturb the trial court’s findings of fact if they are based upon substantial and competent, even though conflicting, evidence, but we freely review the application of the law to those factual findings. State v. Elison, 135 Idaho 546, 549, 21 P.3d 483, 486 (2001). “[T]he police can be said to have seized an individual ‘only if, in view of all of the circumstances surrounding the incident, a reason *568 able person would have believed that he was not free to leave.’ ” Michigan v. Chesternut, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565, 572 (1988) (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980) (opinion of Stewart, J.)); accord State v. Willoughby, 147 Idaho 482, 486, 211 P.3d 91, 95 (2009) (“A seizure initiated through a show of authority requires words or actions, or both, by a law enforcement officer that would convey to a reasonable person that the officer was ordering him or her to restrict his or her movement.”). “[N]ot all personal intercourse between policemen and citizens involves ‘seizures’ of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a ‘seizure’ has occurred.” Terry v. Ohio, 392 U.S. 1,19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889, 905, n. 16 (1968). Whether or not the trooper’s action would constitute a seizure under the Constitution is an objective test that presupposes an innocent person. United States v. Drayton, 536 U.S. 194, 202, 122 S.Ct. 2105, 2111, 153 L.Ed.2d 242, 252 (2002).
The trooper’s actions in walking toward the Toyota certainly indicated that he wanted to talk to the driver. In addition, the average person may not have felt comfortable just driving away at that point, knowing that the officer wanted to say something. However, that does not constitute a seizure under either the Idaho or the United States Constitution. A law enforcement officer does not seize a person merely by approaching the person in a. public place and asking the person if he or she would answer some questions. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323-24, 75 L.Ed.2d 229, 236 (1983) (plurality opinion). “Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification.” Id. Likewise, in Michigan v. Chesternut, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), the respondent began to run upon seeing a marked police cruiser with four officers inside, and the cruiser followed respondent, quickly catching up to him and driving alongside him as he ran. While he was running, respondent discarded packets from his pocket that contained a controlled substance, which the police retrieved. The Supreme Court held, “Without more, the police conduct here — a brief acceleration to catch up with respondent, followed by a short drive alongside him — was not ‘so intimidating’ that respondent could reasonably have believed that he was not free to disregard the police presence and go about his business.” Id. at 576, 108 S.Ct. at 1981,100 L.Ed.2d at 573.
When approaching the Toyota, the trooper did not draw his gun or make any hand gestures indicating that the Toyota should not leave, nor did he even shine his flashlight at the Toyota. Considering the totality of the circumstances in this ease, the trooper did not seize the Toyota by walking up to the driver’s door. His actions certainly indicated that he wanted to talk to the driver, but that does not constitute a seizure.
III.
Conclusion.
The order suppressing evidence is reversed and the judgment of dismissal is vacated.
Chief Justice BURDICK, Justices J. JONES and HORTON concur.

. The time that elapsed between these events is based upon the hour, minute, and second display on the video taken from the dashboard camera in the patrol car and the sound recording of that video.