## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 39643

| | |
|---|---|
| **STATE OF IDAHO,** | **2013 Unpublished Opinion No. 775** |
| **Plaintiff-Appellant,** | **Filed: December 5, 2013** |
| v. | **Stephen W. Kenyon, Clerk** |
| **CONRAD WALTER PETERSEN,** | **THIS IS AN UNPUBLISHED** |
| **Defendant-Respondent.** | **OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Benjamin R. Simpson, District Judge.

Order granting the motion to suppress evidence from the warrantless vehicle search, <u>reversed</u>.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for appellant. Nicole L. Schafer argued.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for respondent. Brian R. Dickson argued.

MELANSON, Judge

The State of Idaho appeals from the district court's order granting Conrad Walter Petersen's motion to suppress evidence found during a warrantless search of Petersen's vehicle. For the reasons set forth below, we reverse.

### I.

### FACTS AND PROCEDURE

In March 2011, two officers pulled a vehicle over on the interstate for a traffic violation. Petersen was identified as the driver. While giving Petersen a warning citation, the officers became suspicious that Petersen might be involved in criminal activity. One of the officers asked Petersen for consent to search the trunk of his vehicle, and Petersen consented. The officers found $71,000 in cash in the trunk.

After finding the cash and questioning Petersen, one of the officers searched the passenger compartment of the vehicle. In it the officer found a marijuana pipe and a small

1

amount of marijuana. Petersen was charged with possession of a controlled substance, I.C. § 37-2732(c)(3), and possession of drug paraphernalia, I.C. § 37-2734A.

Petersen filed a motion to suppress the evidence obtained from the warrantless search of his vehicle, claiming the officers unlawfully extended the duration of the stop and lacked probable cause. The district court entered an order granting the motion to suppress based on a lack of probable cause. The state appeals.

## II.

## ANALYSIS

### A.      Preliminary Procedural Challenges

#### 1.      Inadequate record

As a preliminary issue, Petersen argues that this Court lacks jurisdiction to hear this case because the appellate record did not initially include a notice of appeal. Idaho Appellate Rule 21 provides that failure to file a notice of appeal with the clerk of the district court within the time limits prescribed by the appellate rules deprives the appellate courts of jurisdiction over the appeal. Idaho Appellate Rule 14(a) provides, in part:

> Any appeal . . . may be made only by physically filing a notice of appeal with the clerk of the district court within 42 days from the date evidenced by the filing stamp of the clerk of the court on any judgment, order, or decree of the district court appealable as a matter of right in any civil or criminal action.

In this case, the state filed a notice of appeal with the district court on January 31, 2013, within forty-two days of the date the district court entered its order granting Petersen's motion on December 30, 2012. The notice of appeal was not originally included in the appellate record, but the state later augmented the record with the notice of appeal. Thus, the record reflects that the notice of appeal was timely filed and this Court has appellate jurisdiction.

#### 2.      Preservation of issues

Petersen also argues that the state failed to preserve before the district court the issues the state raises on appeal. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). However, it is a basic tenet of Idaho appellate law that issues argued to or decided by the trial court are reviewable on appeal. *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998). Here, the district court decided the issues now appealed and recognized the arguments raised by the state in the district

court's order granting Petersen's motion to suppress. Accordingly, the issues decided in that order are appealable.

**B.     Motion to Suppress**

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

**1.     Duration of the traffic stop**

In response to the state's argument that there was probable cause to search Petersen's vehicle, he asserts that, even assuming there was probable cause, the search of his vehicle should be invalidated on the grounds that the officers unlawfully extended the traffic stop. Petersen argues that the district court erred in finding that his continued questioning after the purpose of the traffic stop had been accomplished was consensual. The district court found that the officers lacked reasonable suspicion to extend the duration of the stop. The state does not dispute this finding on appeal and, instead, relies on the district court's finding that the detention had evolved into a consensual encounter.

The Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution prohibit unreasonable searches and seizures. A traffic stop is subject to this restraint against unreasonable seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). A Fourth Amendment seizure occurs when an officer, by physical force or a show of authority, restrains the liberty of a citizen. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Willoughby*, 147 Idaho 482, 486, 211 P.3d 91, 95 (2009); *State v. Gutierrez*, 137 Idaho 647, 650, 51 P.3d 461, 464 (Ct. App. 2002). A show of authority will constitute a seizure only if, considering the totality of the circumstances, a reasonable person would not have felt free to leave or otherwise decline the officer's requests and terminate the encounter. *Brendlin v. California*, 551 U.S. 249, 255 (2007); *State v. Reese*, 132 Idaho 652, 653, 978 P.2d 212, 213 (1999); *State v. Roark*, 140 Idaho 868, 870, 103 P.3d 481, 483 (Ct. App. 2004). If a reasonable person would feel free to

disregard the law enforcement officer, then the encounter is consensual and not a seizure. *Willoughby*, 147 Idaho at 486, 211 P.3d at 95; *State v. Page*, 140 Idaho 841, 843-44, 103 P.3d 454, 456-57 (2004). A traffic stop may evolve into a consensual encounter after the officer returns the driver's license and other documents and makes no further show of authority that would indicate that the individual is not free to leave. *Roark*, 140 Idaho at 870, 103 P.3d at 483; *Gutierrez*, 137 Idaho at 650, 51 P.3d at 464. An officer's intent matters only insofar as it has been objectively conveyed to the person at issue. *Brendlin*, 551 U.S. at 260-61; *see also State v. Massee*, 132 Idaho 163, 165, 968 P.2d 258, 260 (Ct. App. 1998). The defendant bears the burden of proving that a seizure occurred or, in this case, continued. *Willoughby*, 147 Idaho at 486, 211 P.3d at 95; *Page*, 140 Idaho at 843, 103 P.3d at 456.

Petersen argues that the traffic stop did not evolve into a consensual encounter after his license and other information were returned to him because he was ordered out of his vehicle, the officers' emergency lights were still engaged, and he was questioned by two uniformed officers while parked just off the interstate. Petersen argues that *Gutierrez* supports this proposition. In *Gutierrez*, a driver was pulled over for speeding, and a run of the driver's information indicated no problems. *Gutierrez*, 137 Idaho at 649, 51 P.3d at 463. The officer noted that the driver seemed nervous so, before returning his information, the officer asked the driver to step out of the vehicle. The officer then returned the driver's information, issued him a warning citation, and asked the driver whether he had any weapons, open containers of alcohol, or drugs in the vehicle. The officer did not turn off his emergency lights or in any way inform the driver that he was free to leave. Moreover, the officer indicated that his purpose in asking the questions was because a passenger in the vehicle seemed exceedingly nervous. The officer requested and the driver gave consent to search the vehicle, which resulted in the discovery of incriminating evidence. The driver filed a motion to suppress, arguing that the officer unreasonably extended the traffic stop, which vitiated the subsequent search of the vehicle. The magistrate denied the motion and the district court affirmed. However, this Court reversed, holding that the continued questioning of the driver after the original purpose of the traffic stop had been accomplished was an unconstitutional seizure. *Id.* at 651, 51 P.3d at 465. In holding that the stop was not consensual, we noted that a reasonable motorist would not have felt free to leave because the officer never advised the driver that he was free to leave; the officer's emergency lights remained on and indicative of a continued detention; and the officer questioned the driver regarding

4

criminal activity in an accusatory tone, further indicating that the exchange was not consensual.[1]

*Id.*

Here, the similarities between *Gutierrez* and Petersen's case are fewer than the differences. As the district court explained:

> Here, the officers returned [Petersen's] license and accompanying information, and also asked [him] if he was "good to go." [Petersen] actually did think he was free to go, which is clearly evidenced by the fact that he acknowledged that he was good to go, shook the officer's hands, and began to leave before the officers reinitiated questioning. While there is no indication as to tone of the exchange, the officers' testimony indicates that the continued questioning was not immediately directed toward accusing [Petersen] of a crime, or inquiring about his nervousness--instead, officers continued to ask about the purpose of [Petersen's] trip, and his intended destination . . . . [A] reasonable person would have believed he or she was at liberty to ignore the police presence and go about his or her business once the officers terminated their questioning, returned [Petersen's] documentation, and asked if he was good to go.

A review of the totality of the circumstances shows that, when Petersen was questioned the second time, the initial traffic stop had terminated and a consensual encounter had begun. Petersen had been issued a warning citation, his license and other information were returned to him, and he was asked, "are you good to go?" indicating the initial stop had terminated and he was free to leave. Petersen argues that, despite these facts, a reasonable person would not have felt free to leave and disregard the officer's renewed questioning after being ordered out of the vehicle and while the officers' overhead lights remained on. However, this Court held after *Gutierrez* that it is neither practical nor necessary for an officer to turn off the emergency lights

---

[1]      In *Gutierrez*, this Court cited to I.C. § 49-625(1) (requiring that drivers stop upon the approach of a police vehicle using emergency lights and remain stopped until the police vehicle has passed or the driver has been otherwise directed by a police officer), and I.C. § 49-1404(1) (prohibiting a driver from fleeing or attempting to elude a police vehicle when given a signal to stop by use of the police officer's emergency lights) for support of this proposition. *Gutierrez*, 137 Idaho at 651, 51 P.3d at 465. The Idaho Supreme Court later held that a driver who pulls over pursuant to I.C. § 49-625 is not seized. *State v. Ray*, 153 Idaho 564, 567, 286 P.3d 1114, 1117 (2012); *see also Roark*, 140 Idaho at 871, 103 P.3d at 484 (noting that the continued use of the overhead lights did not constitute a continued show of authority once the driver was informed that he or she was free to leave). The Court also held in another subsequent case that the use of overhead lights was a significant factor when considering the totality of the circumstances, but declined to hold that it constituted a *de facto* seizure if the driver remained stopped pursuant to I.C. § 49-1404(1). *Willoughby*, 147 Idaho at 487, 211 P.3d at 96; *see also Roark*, 140 Idaho at 871, 103 P.3d at 484 (noting that a driver could not be deemed to be fleeing or attempting to elude if he or she left when given permission to do so by the officer).

before the officer may effectively instruct a driver that he or she is free to leave. *Roark*, 140 Idaho at 871, 103 P.3d at 484. In addition, the practice of asking a driver to exit the vehicle is lawful and is only relevant to the determination of whether the driver was free to leave until the driver is given permission to return to the vehicle. *Gutierrez*, 137 Idaho at 651, 51 P.3d at 465. The officer's indication to Petersen that he was free to leave included implicit permission to return to his vehicle.

Petersen also argues that a reasonable person would not have felt free to leave under the circumstances here because of the location of the stop and the presence of the two uniformed officers. However, the location of the stop is not dispositive. Moreover, a seizure does not occur simply because a police officer asks if the individual is willing to answer some questions or puts forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983); *Ray*, 153 Idaho at 568, 286 P.3d at 1118. This was the case here. When one of the officers asked Petersen, "are you good to go?" Petersen replied that he was and shook both officers' hand.[2] Petersen then indicated that he understood he was free to leave by turning to leave and heading toward his vehicle. When one of the officers asked him if he would answer a few more questions, Petersen voluntarily returned and was willing to converse further with the officer. As a result, the district court did not err in finding that the officers did not unreasonably or unlawfully extend the traffic stop because the questioning occurred during a consensual encounter.

### 2. Probable cause vehicle search

The district court granted Petersen's motion to suppress, ruling that the officers lacked probable cause. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The state may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id. See also State v. Veneroso*, 138 Idaho 925, 929, 71 P.3d

---

[2] We agree with the district court that asking "are you good to go?" will not allow a detention to evolve into a consensual encounter in every instance. The better practice for officers to communicate that an individual is free to leave would be to use a statement, rather than a question.

1072, 1076 (Ct. App. 2003) (automobile exception applies to a search of an automobile where officers have probable cause to believe that the automobile contains contraband or evidence of a crime). Under the automobile exception, police officers may search an automobile and the containers within it when they have probable cause to believe that the automobile contains contraband or evidence of a crime. *Carroll v. United States,* 267 U.S. 132, 153 (1925); *State v. Gallegos*, 120 Idaho 894, 898, 821 P.2d 949, 953 (1991). Probable cause is a flexible, common-sense standard. A practical, nontechnical probability that incriminating evidence is present is all that is required. *Texas v. Brown*, 460 U.S. 730, 742 (1983); *State v. Johnson*, 152 Idaho 56, 61, 266 P.3d 1161, 1166 (Ct. App. 2011). Probable cause does not require an actual showing of criminal activity, but only the probability or substantial chance of such activity. *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983); *State v. Newman*, 149 Idaho 596, 600, 237 P.3d 1222, 1226 (Ct. App. 2010). The facts known to the officers must be judged in accordance with the factual and practical considerations of everyday life on which reasonable and prudent people act. *Gates*, 462 U.S. at 231; *Johnson*, 152 Idaho at 61, 266 P.3d at 1166. If probable cause exists to believe a vehicle contains evidence of criminal activity, the search of any area of the vehicle in which the evidence might be found is authorized. *United States v. Ross*, 456 U.S. 798, 820-21 (1982); *Newman*, 149 Idaho at 600, 237 P.3d at 1226.

The state contends that the facts available to the officers, combined with their training and experience, provided probable cause to believe that incriminating evidence relating to drugs or cash would be found in Petersen's vehicle. As noted above, probable cause requires only a showing of the probability or substantial chance of criminal activity. *Gates*, 462 U.S. at 243 n.13; *Newman*, 149 Idaho at 600, 237 P.3d at 1226. Probable cause does not require a belief that any specific criminal activity is afoot before searching; instead, all that is required is a showing of probable cause to believe that evidence of *some* criminal activity would be found. *Newman*, 149 Idaho at 600-01, 237 P.3d at 1226-27; *see also State v. Bunting*, 142 Idaho 908, 916, 136 P.3d 379, 386 (Ct. App. 2006). The expertise and experience of the officer making the probable cause determination may be taken into account. *State v. Ramirez*, 121 Idaho 319, 323, 824 P.2d 894, 898 (Ct. App. 1991).

The officers' testimony elicited during the suppression hearing showed, and the district court found, that the officers were aware of potentially incriminating facts before they began searching the passenger compartment of Petersen's vehicle. Petersen had told the officers he

was driving from Minnesota to Seattle for a two-day visit with a recent acquaintance. His car was very clean for such a long trip, and all that was in the passenger compartment was a half-consumed 12-pack of soda and two cell phones on the passenger seat, a can of air freshener in the center console, and a pair of jeans on the back seat. Based on their training and experience, the officers testified that drug buyers, dealers, and traffickers usually use two cell phones to avoid detection; caffeinated drinks suggested that Petersen needed caffeine to stay alert and awake on the long journey; air freshener is often used to mask the odor of drugs; and the jeans suggested an odd lack of luggage for the long trip.[3]

Additionally, the officers testified to other circumstances they noted as criminal indicators that added to their suspicion. They noted that Petersen exhibited a nervous demeanor, and his hands shook when he gave the first officer his license and other documents. The officers testified that Seattle is a source city for drug distribution and that large cities like Minneapolis are destination cities. Petersen told the officers that he had been unemployed for four years, but the officers discovered $71,000 in cash in Petersen's trunk during a consensual search. Finally, the officers testified that the cash was bundled in a manner that they knew from their training and experience was consistent with how drug proceeds are bundled.[4]

Petersen argues that the value of these facts in the probable cause equation is reduced by their noncriminal nature and his reasonable explanations for them. Specifically, Petersen claimed that his shaky hands and nervous demeanor were likely caused by the caffeine he had been drinking. He said that he always traveled with that amount of cash and preferred to deal in

---

[3]    Although the officers testified that the caffeinated drinks and single pair of jeans piqued their suspicion under the circumstances, these facts are insufficient independently or together to raise a suspicion of criminal activity. An otherwise innocuous fact is not incriminating simply because an officer, based on his or her training and experience, can produce a potentially incriminating explanation for that fact. We recite these facts here only because they are part of the totality of circumstances used in the calculus of probable cause.

[4]    The money was bundled in seven bricks of $10,000 each (one stack had $11,000), each with individual stacks of $1,000 wrapped with a single $20, $50, or $100 bill and bound into the brick by a large rubber band. The officers testified that they often encountered people traveling with large sums of cash--approximately twice a month--but they had yet to encounter someone not involved in illicit activities who bundled their cash in the manner that the cash in the trunk of Petersen's vehicle was bundled.

cash as a result of his experience as a used car salesman. Petersen also stated that he was traveling with the cash because he planned to buy a motor home while in Seattle.

Petersen is correct that none of these facts are criminal in nature, and any one of these facts is not, by itself, proof of criminal activity. But in making a determination of probable cause, the relevant inquiry is not whether particular conduct or facts are "innocent" or "guilty"; instead, the focus is on the degree of suspicion that attaches to particular types of noncriminal conduct or facts when coupled with officer training and experience. *Gates*, 462 U.S. at 243 n.13. Indeed, conduct or facts that are seemingly innocent in nature or susceptible to innocent explanations may nonetheless provide the basis for probable cause. *Id.*; *see also State v. Grantham*, 146 Idaho 490, 497, 198 P.3d 128, 135 (Ct. App. 2008) (noting that seemingly innocent facts may provide reasonable suspicion when taken together and combined with officer training and experience); *State v. Brumfield*, 136 Idaho 913, 917, 42 P.3d 706, 710 (Ct. App. 2001) (stating that facts susceptible to innocent explanations separately may still warrant further investigation when taken together).

Here, the totality of the circumstances known to the officers before the search, coupled with their training and experience, provided a substantial chance or probability that a search of Petersen's vehicle would yield evidence of criminal activity involving cash or drugs. Therefore, probable cause existed for the search of the passenger compartment of Petersen's vehicle, and the district court erred by suppressing the evidence obtained during that search.

## III.

## CONCLUSION

Petersen's procedural arguments that the state failed to provide an adequate record and failed to preserve issues for appeal are without merit. The district court correctly found that the officers did not unlawfully extend the duration of the traffic stop because it had evolved into a consensual encounter. However, the district court erred in finding under the totality of the circumstances that the officers did not have probable cause to search Petersen's vehicle. Accordingly, we reverse the district court's order granting the motion to suppress evidence obtained from the search of Petersen's vehicle.

Judge LANSING and Judge GRATTON, **CONCUR.**

9